IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 7, 2001

## GEORGE CAMPBELL, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-19345      Chris Craft, Judge**

––––––––––––––

**No. W2000-00703-CCA-R3-PC - Filed September 10, 2001**

––––––––––––––

The petitioner appeals the dismissal of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he had effective assistance of trial counsel. After a careful review of the record, we conclude that the petitioner failed to meet his burden of proving ineffective assistance of counsel.  Accordingly, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Marty McAfee (on appeal) and Michael E. Scholl (at trial), Memphis, Tennessee, for the appellant, George Campbell, Jr.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Elaine Sanders, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**DISCUSSION**

On April 22, 1991, the petitioner, George Campbell, Jr., with two accomplices, Lontina McGary and Vander Moore, participated in a robbery at a Memphis residence that led to the shooting death of one of the house's occupants.  See State v. George Campbell, Jr., No. 02-C-01-9408-CR-00165, 1996 WL 368224, at * 1 (Tenn. Crim. App. June 28, 1996), perm. to appeal denied (Tenn. Jan. 6, 1997). The petitioner, who planned the robbery, supplied his accomplices with guns, and drove the getaway truck, was subsequently convicted by a jury of felony murder and aggravated assault.  Id.  He was sentenced to life on the felony murder conviction, and ten years as a Range II, multiple offender on the aggravated assault conviction, with the sentences to be served consecutively.  His conviction was affirmed by this court on direct appeal.  See id.

On January 5, 1998, the petitioner filed a *pro se* petition for post-conviction relief, alleging that his trial counsel were ineffective for failing to contest the admissibility of a photograph of his truck, and that the trial court issued an unconstitutional reasonable doubt instruction to the jury. Post-conviction counsel was appointed, and on March 23, 1998, an amended petition was filed. In his amended petition, the petitioner alleged that trial counsel were ineffective for failing to properly prepare and investigate the case against him. Specifically, he alleged that counsel failed to properly discuss the case with him, failed to adequately prepare for trial, and failed to adequately defend him during trial.

At the post-conviction evidentiary hearing, the petitioner testified to a number of alleged deficiencies in the representation provided by his trial counsel. Among other things, he complained that his two trial counsel failed to hire an investigator; failed to hire anyone to assist in the mitigation of his case; failed to investigate his school records or mental history; failed to file a pretrial suppression motion or argue at trial against the State's introduction of a photograph of his truck; and failed to call important witnesses in his case. He also complained that trial counsel opened the door to testimony by his alleged accomplice that he had been involved in similar crimes in the past, and that one of his trial counsel slept during the State's voir dire of the jury.

The petitioner testified that he first met Vander Moore when they were cell mates in jail awaiting their respective trials. At that time, Moore told him that it had been McGary's idea to implicate him in the crime. The petitioner said that he informed trial counsel of this conversation, but that they failed to interview Moore. He also told trial counsel about a woman who could provide him with an alibi for the time of the robbery. Trial counsel told him that they could not locate the alibi witness, despite his having provided her name and address. The petitioner said that he had pointed this woman out to one of his trial counsel when he saw her sitting in the courtroom after the verdict was read, and that counsel answered only that he would "get to her."

The petitioner testified that one of his trial counsel told the trial court that he was "not psychologically ready" to try the case on the date the case was originally set for trial, causing the matter to be postponed. He claimed that this same counsel fell asleep twice during the State's voir dire of the jury. Trial counsel had woken himself the first time; during the second episode, which lasted about eight minutes, the petitioner had had to wake him by tapping him on the shoulder.

The petitioner complained that trial counsel elicited testimony from McGary on cross-examination to the effect that she had been involved in prior robberies with the petitioner – information that she had not mentioned during the State's direct examination. The petitioner further complained that trial counsel had not filed a motion to suppress the photograph of his pickup truck, on the grounds that the police should have placed the photograph in a photographic "line-up" of other similar-looking trucks when showing it to the witnesses. He also thought that trial counsel should have objected to the photograph at trial, on the grounds that it did not match witnesses' descriptions of the vehicle observed at the crime scene.

The petitioner thought that trial counsel should have investigated his mental history because he had received counseling in the past, but acknowledged that he did not think it would have helped his trial. He also thought that they should have investigated his school records. Such an investigation, he asserted, would have revealed that he had been a "pretty good student" and had graduated, and thus was not the type of person to commit a murder.

One of the petitioner's trial counsel was deceased at the time of the evidentiary hearing. The other testified that he had been licensed to practice law in Tennessee since 1963, and that his practice consisted almost exclusively of criminal defense work, including "a lot" of murder cases. Although his records of the petitioner's case had been destroyed in a fire, trial counsel indicated that he had a fairly good recollection of the petitioner's capital murder trial.

Trial counsel said that he had done his own investigation in the case; he had not felt that it was necessary to hire an investigator. He understood the petitioner's theory that McGary was a deceitful "jilted lover," and had known which witnesses needed to be interviewed. He had not heard the alleged alibi witness's name until the evidentiary hearing, and could say with "ninety-nine and nine tenths percent assurance" that the petitioner had never mentioned any alibi witness. He said that the petitioner never told him of seeing the alibi witness in the courtroom after the verdict was read, and that if he had, he would have immediately approached the court with that information.

Trial counsel acknowledged that he had not hired a mitigation expert for the penalty phase of the trial. However, he had put together his own mitigation witnesses, and thought that the jury's verdict, in giving the defendant life in prison instead of the death penalty, indicated the effectiveness of those witnesses. He had not objected to the introduction of the photograph of the petitioner's truck, because he had thought it was a question of fact for the jury. In that regard, he had argued to the jury that none of the witnesses had been able to identify the petitioner's truck in the photograph as the same vehicle they observed at the scene.

Trial counsel had no independent recollection of having received a letter from the petitioner telling him that Vander Moore would testify on his behalf, and said that if the petitioner told him that Moore had information that would exculpate him, he would have attempted to interview Moore. Although he could not remember for certain, he thought it likely that he had told the petitioner that Moore, who was awaiting his separate trial, "would certainly invoke his Fifth Amendment right" if called to testify.

Trial counsel testified that McGary brought up the prior robberies for the first time during his cross-examination, when he questioned her about the "business deals" that she said she had been involved in with the petitioner. He indicated that she had never mentioned these alleged prior robberies to the prosecutor, and said that she was unable to provide any specific details when he questioned her about them. He therefore had considered her testimony as a "windfall," and had argued to the jury that it lent credence to his theory that she was fabricating the petitioner's involvement in the crime in an effort to gain some favorable consideration from the parole board "down the line."

Vander Moore testified at the post-conviction hearing that McGary had approached him about the robbery, telling him that she had a friend who had planned it. He said that she had written him letters before their scheduled trial in which she told him that they "needed to bring up [the petitioner]'s name" in order to get some "time off of [them]" and to get "a break in the case." At Moore's trial, McGary departed from the scenario that they had discussed, testifying that she was innocent, and that Moore and the petitioner had planned the robbery. Moore testified that the petitioner's counsel had come to talk to him about the case before the petitioner's trial. He said that the prosecutor had also talked with him, and had tried to get him to testify against the petitioner, but that he had refused. He had never identified the petitioner as an accomplice, but had also never denied that he was involved. He explained that it had been night when McGary and an individual whom she referred to as "George" came to pick him up before the robbery, and that he had, therefore, never gotten a good look at the man.

On March 20, 2000, the post-conviction court entered an order denying the petition for post-conviction relief, finding that the petitioner had failed to meet his burden of showing either that trial counsel had been deficient in their representation, or that any alleged deficiencies in counsel's performance prejudiced the outcome of his trial. The petitioner filed a timely appeal to this court.

## ANALYSIS

The petitioner contends that the post-conviction court erred in finding that he failed to meet his burden of showing ineffective assistance of counsel. Although he asserted a number of alleged instances of ineffective representation in his petition and at the evidentiary hearing, he limits himself on appeal to arguing that trial counsel were ineffective: (1) for falling asleep at voir dire; (2) for failing to interview or subpoena the alibi witness, or to take any action when the petitioner informed them of her presence in the courtroom; and (3) for opening the door, during cross-examination of McGary, to testimony that the petitioner had committed several similar, uncharged crimes in the past. He also argues, for the first time on appeal, that trial counsel were ineffective for their deficient representation during the direct appeal of his case.[1]



**Standard of Review**

The petition for post-conviction relief is governed by the Post-Conviction Act of 1995, which provides that the petitioner has the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). The post-conviction court's findings of fact in

---

[1]Following the order of the post-conviction court denying relief, the petitioner requested that his appointed post-conviction counsel be dismissed and new post-conviction counsel be appointed for the appeal. Counsel made the same request, and new appellate post-conviction counsel was appointed. However, the petitioner later filed a *pro se* appellate brief in this matter, which preceded by two weeks the filing of an appellate brief by his new counsel. In view of the fact that he is represented by counsel, we consider only counsel's appellate brief, and not that prepared and filed by the petitioner himself. See State v. Lyons, 29 S.W.3d 48, 51 (Tenn. Crim. App. 1999), perm. to appeal denied (Tenn. 2000).

a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1991). The court's conclusions of law, however, are reviewed purely *de novo*. Id. The issue of ineffective assistance of counsel presents mixed questions of law and fact and is therefore reviewed *de novo*, with a presumption of correctness given to the post-conviction court's findings of fact, and the post-conviction court's conclusions of law reviewed *de novo* with no presumption of correctness given to the court's conclusions. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

To prove ineffective assistance of counsel, the petitioner bears the burden of showing both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of his case. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). This is a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that counsel's actions or decisions "f[e]ll below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a "reasonable probability" that the outcome of the proceeding would have been different had it not been for counsel's deficiencies in performance. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). For this reason, courts need not approach the test in a specific order, or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

When analyzing a petitioner's allegations of ineffective assistance of counsel, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of

reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996).

### A.  Allegation that Trial Counsel Slept During Voir Dire

At the evidentiary hearing, the petitioner testified that trial counsel twice fell asleep during voir dire, sitting at counsel table without moving, with his head resting on his hand, and with his eyes closed. He claimed that he knew that counsel had been asleep because after he tapped him on the shoulder, he "blink[ed] his eyes" and looked at him as if "trying to get his focus after he was being [sic] asleep." As support for his allegation, the petitioner pointed to statements by a member of the jury pool to the effect that he had observed the petitioner's counsel sleeping during voir dire.

Trial counsel, on the other hand, adamantly denied that he had been asleep. He testified that he sometimes closes his eyes in order to listen and concentrate during the State's voir dire of the jury, that he was focusing "one hundred and ten percent" on what was being said, and that it was "absolutely not correct" that he had fallen asleep, or that the petitioner had had to wake him. He acknowledged that a member of the jury pool had made a comment indicating that he thought the petitioner's counsel were asleep. However, he thought that it was obvious from the juror's lengthy diatribe against the justice system that he was disgruntled, and attempting to get out of jury service. If he had thought there was any merit in the request, he would have asked for a curative jury instruction from the trial court. Under the circumstances, however, he thought that it would have been frivolous to do so.

With regard to this allegation, the post-conviction court made the following findings of fact:

> After hearing the testimony at the hearing concerning this allegation, this Court finds as a matter of fact that petitioner's trial attorney was not sleeping, but assuming his normal trial appearance during voir dire, which is leaning forward with his eyes closed, listening. The juror in question was obviously dissatisfied with the criminal justice system, and bitter about jury service in general, and made intemperate remarks during jury selection. That juror was excused, and any motion to strike the entire jury panel would have been denied, as without merit. Petitioner's attorney is under no duty to make frivolous motions.

The evidence does not preponderate against these findings. Other than his own testimony and the potential juror's comments, which the record reveals to have been made in the context of a

-6-

diatribe against what he considered to be a corrupt system of justice in this country, the petitioner offered no evidence to prove that trial counsel had been asleep, as he claimed, rather than simply concentrating intently, as trial counsel testified. This matter, therefore, essentially amounted to an issue of credibility. We defer to the judgment of the post-conviction court in matters pertaining to the credibility of witnesses or the weight and value to be given their testimony. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001) (citing Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997)). Additionally, the post-conviction court indicated at the hearing that it was familiar with trial counsel, and knew that it was his style to listen to voir dire with his eyes closed. This allegation is without merit.

## B. Failure to Interview Alibi Witness

The petitioner contends that his trial counsel were ineffective for failing to interview or subpoena an alibi witness. He asserts that he provided trial counsel with the woman's name and address, and pointed at her after seeing her in the courtroom, but that trial counsel failed to take any action. Trial counsel, however, testified that he could say with "ninety-nine and nine tenths percent assurance" that he had never heard the woman's name until the evidentiary hearing, and that the defendant had never mentioned any alibi witness to him. He was confident that, had the petitioner ever mentioned any alibi witness, he would have immediately issued a subpoena for her appearance. He was equally confident that had the petitioner told him of seeing the woman in the courtroom after the verdict was read, he would have immediately taken steps to bring it to the court's attention.

We first note that the petitioner failed to present the alleged alibi witness at his evidentiary hearing, although post-conviction counsel advised the court that he had attempted to locate the witness. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). In the absence of evidence to show that the alleged witness actually existed, or what testimony she would have offered at trial, the petitioner cannot establish prejudice. Id. at 757.

We further note that the post-conviction court resolved the credibility issue involved in this allegation against the petitioner and in favor of trial counsel. Thus, the court found that the petitioner failed not only to show prejudice, but also to show any deficiency in counsel's representation. The record supports these findings. This allegation is without merit.

## C. Trial Counsel's Cross-Examination of Accomplice

The petitioner also contends that trial counsel was ineffective for opening the door, during his cross-examination of McGary, to testimony that the petitioner had been involved in similar crimes in the past. He asserts that trial counsel's "deliberate effort to elicit testimony of similar, uncharged robberies" is proof that his representation fell below the range of competence demanded of an attorney in a criminal case.

When trial counsel was asked at the evidentiary hearing whether he had questioned McGary directly about her involvement in other robberies with the petitioner, he replied:

> Let me answer this question. I asked her about, when she said something about they were involved in business deals, then, of course, just listening to what [the prosecutor] said without having read the record. Then, as I recall, because I argued it to the jury. When she said that, then she started talking about, you know, about other instances where they were involved in a robbery.

Admittedly, trial counsel's testimony on this matter was far from clear. What is clear, however, is that he did not, as the petitioner's brief seems to imply, admit to having entered into his cross-examination of McGary with the deliberate intent to elicit information about prior robberies. Trial counsel testified, in fact, that the first time that she told anyone about the alleged prior robberies was during his cross-examination.

Trial counsel admitted to having questioned McGary at length about the prior robberies after she brought them up on cross-examination. He explained that he considered her testimony about the prior robberies, due to her failure to come up with any specific details, to be a "windfall," showing her lack of credibility:

> Because when I started asking her specifically, you know, what was the time, place, circumstances of these other robberies and, all of a sudden, just like [the prosecutor] suggested in the record when she was cross-examining [the petitioner], why she never told, you know, the prosecutor the name [of the petitioner] until the day of the trial. I personally thought it was a windfall. The whole theory about Ms. McCrary (sic) whatever her name was, was that she was really putting [the petitioner] in there so that she could get some kind of favorable consideration from the Parole Board down the line. And, that was her motive for testifying and putting [the petitioner] in. And, it just fell into place so to speak, that low [sic] and behold all these real bad acts that she exaggerated on she just decided, the first time she tells anybody is basically when she testified on my cross-examination. So, I thought it was a windfall, I argued to the jury but not successfully.

When analyzing a petitioner's allegation of ineffective assistance of counsel, we do not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The petitioner failed to present any evidence to show that trial counsel was inadequately prepared for his cross-examination of McGary. Trial counsel testified that he had had extensive conversations with McGary prior to trial, and that he had reviewed the statement she gave to the police. This allegation, therefore, is without merit.

-8-

### D. Counsel's Performance on Direct Appeal

The petitioner also alleges ineffective assistance of counsel on direct appeal. As proof, he points to the language of the opinion in the direct appeal of his case, in which a panel of this court criticized counsel's failure to cite adequately to the record, failure to provide a sufficient record for review, and use of "disjointed" and "incomprehensible" argument. See State v. George Campbell, Jr., No. 02-C-01-9408-CR-00165, 1996 WL 368224, at * 2-4 (Tenn. Crim. App. June 28, 1996), perm. to appeal denied (Tenn. Jan. 6, 1997). The petitioner failed to raise counsel's performance on appeal as an issue in his post-conviction petition, however. He also failed to present any evidence at the post-conviction hearing, or to argue it as an issue before the post-conviction court. This issue, therefore, is waived. See Tenn. R. App. P. 36(a).

### CONCLUSION

Based upon a careful review of the record, we conclude that the petitioner has failed to meet his burden of proving by clear and convincing evidence his allegations of ineffective assistance of trial counsel. Accordingly, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE